*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* AMY/AMY-WICKWIRE, Minors.

UNPUBLISHED
November 9, 2021

No. 356745
Roscommon Circuit Court
Family Division
LC No. 19-724457-NA

Before: SWARTZLE, P.J., and SAWYER and LETICA, JJ.

PER CURIAM.

Respondent-mother appeals as of right the trial court orders terminating her parental rights to her three minor children: ALA, AMA, and TA. Respondent's parental rights were terminated under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), and (j). The children's fathers are not parties to this appeal. For the reasons set forth below, we affirm.

## I. BACKGROUND

This case began when Children's Protective Services was alerted that respondent was engaged in a dating relationship with a registered sex offender. Representatives of Children's Protective Services met with respondent to inform her of her duty to protect ALA and AMA from her boyfriend (TA had yet to be born), and respondent agreed in writing to prohibit her boyfriend from having unsupervised contact with the children. Respondent habitually breached this agreement, and her boyfriend was repeatedly reprimanded for having contact with the children. ALA and AMA were removed from respondent's care when Children's Protective Services learned that respondent's boyfriend was sexually abusing ALA. Respondent initially continued to support her boyfriend by attending all of his court appearances and calling him at the jail. Respondent was pregnant with TA when ALA and AMA were removed; TA was removed from respondent's care the day he was born.

The Department of Health and Human Services (the Department) developed a case-service plan after the trial court took jurisdiction of the children. Respondent received a psychological evaluation and began attending therapy. During this case, respondent found housing and stable employment. Respondent participated in supervised parenting time with AMA and TA; however, ALA, who was a teenager, did not want to have parenting time with respondent, and the Department did not require ALA to do so. Respondent's psychological evaluation stated that she

-1-

would require treatment for a significant amount of time before she could be safely reunified with her children, and the Department did not believe that respondent was benefiting from the services that she was receiving. Accordingly, the Department initiated proceedings to terminate her parental rights. The trial court eventually terminated respondent's parental rights. This appeal followed.

## II. ANALYSIS

Respondent's sole argument on appeal is that the Department did not provide her with adequate services to meet her needs and that it therefore failed to meet its obligation to provide reasonable efforts to reunify the family. To preserve an argument about reasonable efforts for family reunification, a respondent-parent must object to services at the time they are offered. *In re Frey*, 297 Mich App 242, 247; 824 NW2d 569 (2012). Once during the pendency of this matter, respondent raised concerns that she was not receiving therapy frequently enough. After this objection, respondent began receiving weekly sessions. Respondent did not raise any other objections or concerns regarding the services that were offered, including the frequency of therapy. Thus, this issue is unpreserved.

Unpreserved issues are reviewed for plain error. *In re VanDalen*, 293 Mich App 120, 135; 809 NW2d 412 (2011). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) the error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*. (quotation marks omitted), citing *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "Generally, an error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *In re Utrera*, 281 Mich App 1, 8-9; 761 NW2d 253 (2008). The appellant bears the burden of persuasion with respect to prejudice. See *Carines*, 460 Mich at 763.

"In general, when a child is removed from the parents' custody, the petitioner is required to make reasonable efforts to rectify the conditions that caused the child's removal . . . ." *In re Fried*, 266 Mich App 535, 542; 702 NW2d 192 (2005). "Reasonable efforts to reunify the child and family must be made in all cases except if" certain aggravating circumstances exist. MCL 712A.19a(2). "As part of these reasonable efforts, the Department must create a service plan outlining the steps that both it and the parent will take to rectify the issues that led to court involvement and to achieve reunification." *In re Hicks/Brown*, 500 Mich 79, 85-86; 893 NW2d 637 (2017). In addition to the Department's duty to offer services to the respondent, the respondent has a duty to participate in and benefit from the services. *In re TK*, 306 Mich App 698, 711; 859 NW2d 208 (2014).

Respondent argues that services offered to her by the Department were not adequate to overcome her psychological problems and develop her parenting skills. The record belies this argument. Shortly after the initial disposition, a psychological evaluation was prepared, and the psychologist determined that respondent's treatment would take a long time and the children should not be returned to her in the near future. Respondent was offered bimonthly therapy sessions, and the frequency of these sessions increased to weekly upon request. There is nothing in the record to support respondent's assertion that weekly sessions were insufficient to meet her needs. Indeed, respondent never requested additional sessions, and respondent's therapist testified that she was making some progress.

Additionally, the Department provided respondent's therapist with a "Connections Workbook" to assist respondent in forming attachments with her children, and the Department offered respondent Trauma Informed Parenting classes. Respondent underwent a second psychological evaluation, and the psychologist determined that respondent had not yet benefited from her treatment, respondent still failed to appreciate the trauma that had been inflicted on her children, and it would be unsafe to return the children to her care. The children's therapist testified that it would require years of treatment before reunification with AMA could be successful and that no amount of treatment could enable a successful reunification with ALA. Furthermore, bond assessments were conducted to evaluate respondent's attachments to AMA and TA, and the doctor concluded that respondent would not be able to develop the skills needed to care for AMA and TA within a reasonable time. Even respondent's expert witness testified that her problems were "chronic," he was "very cautious" about reunification, and "the best outcome" would be "to have her not independently in charge of her children."

Respondent argues that petitioner should have compelled ALA, who was 14 years old at the time of termination, to participate in joint-therapy sessions with her; this argument demonstrates respondent's failure to appreciate the psychological trauma that she inflicted on her daughter by allowing ALA to be sexually abused by respondent's boyfriend and respondent continuing to support him after the abuse occurred. ALA personally explained this trauma in detail in a letter that she prepared with her therapist's assistance. Moreover, ALA did agree to participate in two joint-therapy sessions with her mother, and her therapist testified that these sessions "made things worse for" ALA and that they were only helpful in that they assisted ALA with coming to the realization that she did not want to continue trying to repair her relationship with her mother. Accordingly, there is nothing in the record to support respondent's assertion that anyone would have benefited from compelled visitation between respondent and ALA, and ALA's therapist testified that there was nothing the Department could have done to assist in attempting to reunify ALA and respondent.

The Department made considerable efforts to reunify respondent with her children and to facilitate a nurturing relationship between respondent and the children. Respondent failed to benefit from those services. The Department noted the children's need for permanency and that respondent failed to show she would be able to rectify the problems in a reasonable amount of time. Thus, the Department made reasonable efforts to reunify respondent with the children.

## III. CONCLUSION

For the reasons stated in this opinion we affirm the trial court's order terminating respondent's parental rights to the children.

/s/ Brock A. Swartzle
/s/ David H. Sawyer
/s/ Anica Letica

-3-